**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | Case No. 3:12-CR-00115-RCJ |
| vs. | **ORDER** |
| THOMAS EDWARD BAYE, | |
| Defendant. | |

Defendant moves for compassionate release, claiming that his widowed mother's deteriorating health and his fears of contracting COVID-19 constitute extraordinary and compelling reasons for release. (ECF Nos. 48, 52.) Finding that Defendant has not exhausted the latter claim, neither reason is extraordinary and compelling, and that he is a danger to the society, the Court denies these motions.[1]

**FACTUAL BACKGROUND**

Defendant has spent the bulk of his life in prison because of his extensive criminal history, which started when he was sixteen years old. Before his current conviction of bank robbery with

---

[1] Defendant also has a motion pending on the docket by which he seeks appointment of counsel. (ECF No. 47.) The Federal Public Defender's Office is currently representing Defendant for this issue. (ECF No. 51.) The Court therefore denies this motion as moot.

a dangerous weapon (a BB gun),[2] Defendant had amassed numerous convictions: two for burglary, two for receipt of stolen property, one for battery, one for auto theft, one for escape from prison, one for use and carrying of a firearm during the commission of a crime of violence, one for felon in possession of a firearm, and five for bank robbery (one armed). (Presentence Rep. (PSR) at 6–9.) Despite these encounters with the law, Defendant always recidivated. For example, Defendant was released from prison on June 2012 after serving more than sixteen years for the convictions of armed bank robbery and related counts. (*Id.* at 9.) On November 2012—a mere *five* months later—Defendant committed his *sixth* bank robbery, (*id.* at 3), which resulted in his current sentence, (*see* ECF No. 33).

The guideline range for this conviction was between fifty-one and sixty-three months. (PSR at 17.) The Probation Office, however, recommended an upward departure to the statutory maximum of 300 months, finding that Defendant "poses a significant threat to the community based on his repeated criminal conduct." (*Id.* at 14.) The Government also advocated for imposing the statutory maximum during the sentencing hearing. (ECF No. 40 at 6:14–16.) The Court agreed that the guideline range was too low because the guideline calculation underrepresented his criminal history, this sentence should not be drastically less than the last sentence based on similar conduct, and many of Defendant's crimes, including the current one, were inherently violent. (*Id.* at 75:8–76:10.) It then varied upward and imposed a sentence of 144 months. (ECF No. 33.)

Defendant is eighty-nine months into this sentence with a projected release date of February 9, 2023. *Find an inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited on May 22, 2020). He is now fifty-four years old and has pain in his left knee requiring the use of a cane. (*See* ECF No. 53.) While in prison, he has been a "model prisoner," who has not

---

[2] Under federal regulations, a BB gun "is a dangerous weapon but not a firearm." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.1 cmt. n.1(H) (U.S. Sentencing Comm'n 2018).

committed any disciplinary infractions in over twenty years. (ECF No. 54 Ex. A.) His correctional counselor states, "In my opinion [Defendant] is ready for the world. Personally, if I had a business and he wanted to work for me I would hire him in a second." (*Id.*)

Defendant's mother, Mrs. Slocum, is in failing health: She is seventy-one years old. (ECF No. 52 Ex. C.) She has had major heart issues since 2000. (*Id.*) She had three strokes in the past seven years, leaving her partially deaf. (*Id.*) She has poor nighttime vision and suffers from diabetes, degenerative joint disease, and severe arthritis. (*Id.*) She has required four ambulance rides to the hospital in the past year. (*Id.*) She has suffered from two serious falls in the past six years—one breaking her hip. (*Id.*) A neighbor recently asked the police to conduct a welfare check on Mrs. Slocum after not seeing her for a few days; the police found her helpless in bed. (*Id.*) In addition to basic necessities, Mrs. Slocum requires numerous prescription medications and doctor's appointments, and she struggles to meet these needs on her own. (*Id.*)

Mrs. Slocum lives alone in the rural community of Gates, North Carolina—twenty-three miles from her hospital, Naval Medical Center, in Portsmouth, Virginia. (ECF No. 52 Ex. C.) She receives full medical benefits at the Naval Medical Center due to her late husband's military service. (*Id.*) She has been a widow since 2003. (*Id.*) While she has another son and two daughters, none of them take care of her. (*Id.*) She has not seen the son in over twenty years, and her two daughters live across the country in California. (*Id.*) One suffers from schizoaffective disorder and epilepsy, and the other serves as her caregiver, as well as caring for her own children. (*Id.*)

Defendant concludes from these facts that his mother is in dire need of someone to live with her and tend to her needs. He further contends that he is willing and able to be that person. On March 31, 2020, he therefore sent a letter to the warden of his prison, requesting that the Director of the Bureau of Prisons (the Director) file a motion for compassionate release on his behalf on this basis. (ECF No. 49.) The warden denied this request, finding that this circumstance

is not extraordinary and compelling. (*Id.*) Defendant did not administratively appeal this decision. (ECF No. 52 at 9:8–10.)

Defendant also claims that he is at a high risk of becoming infected with COVID-19 while incarcerated in Federal Correctional Institution, Butner Low. As of May 26, 2020, there are 107 inmates and three staff members with confirmed and active cases of COVID-19 in this institution. *COVID-19 Coronavirus: COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/ coronavirus/ (last visited May 26, 2020). Defendant, however, does not claim that he falls into a high-risk category (i.e., a person who is in danger of becoming severely ill from the disease). *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ groups-at-higher-risk.html (last visited May 26, 2020).

## LEGAL STANDARD

A district court may not generally "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is that a court may grant a reduction to a term of imprisonment "(and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" based on "extraordinary and compelling reasons." § 3582(c)(1)(A). Before granting such relief, the court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" and find that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Either the Director or a defendant may bring a motion under § 3582(c)(1)(A), but a court may not consider a motion brought by a defendant unless he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

**ANALYSIS**

Defendant argues both his mother's deteriorating condition and concerns of his exposure to COVID-19 while incarcerated constitute extraordinary and compelling reasons for his release. The Government opposes these motions, maintaining Defendant has not exhausted his claim based on COVID-19, neither of his claims constitute an extraordinary and compelling reason, and he is a danger to the community. The Court agrees with the Government on all accounts and thus denies the motions.

## I.    *Defendant Failed to Exhaust the COVID-19 Claim*

The Court first turns to whether Defendant has overcome the procedural hurdle of exhaustion for the COVID-19 claim. Defendant admits that he has not presented this issue to the warden but argues there is no requirement to raise every issue in the letter. He alternatively argues the pressing nature of COVID-19 and the futility of presenting this claim to the warden excuse his failure to do so. The Court disagrees.

### A.    *Failure to Exhaust Under § 3582(c)(1)(A) Deprives a Court of Jurisdiction*

The Government argues that the exhaustion requirement under § 3582(c)(1)(A) raises the issue of subject-matter jurisdiction. This argument is correct because the provision speaks directly to judicial authority.

The Court does not make this determination lightly. Casting the issue in such a way has drastic consequences because "challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them sua sponte." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). Parties may consequently raise "[t]ardy jurisdictional objections" which "can . . . result in a waste of adjudicatory resources and can disturbingly disarm litigants." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Also, and of significance here, a court may not expand

its jurisdiction "by judicial decree," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), which prevents the Court from excusing a failure to exhaust where the statute does not provide authority to do so. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) (holding courts have "no authority to create equitable exceptions to jurisdictional requirements"). Thus, branding a statutory obstacle as a matter of jurisdiction requires a clear statement from Congress because of the "harsh consequences" that attend such a label. *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015).

While courts require that Congress clearly state an intent to make a procedural requirement jurisdictional, they do not mandate that Congress "incant magic words" to do so. *Fort Bend*, 139 S. Ct. at 1850 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006)). Congress may instead accomplish this goal by linking the procedural requirement to the courts' authority. *Id.* One indication that Congress did not intend to make a procedural requirement jurisdictional is where it provides for jurisdiction in a section distinct from the provision governing the requirement. *Id.*

Applying this standard, the Supreme Court has frequently found exhaustion requirements non-jurisdictional where they do not "speak to a court's authority" or "refer in any way to the jurisdiction of the district courts." *Fort Bend*, 139 S. Ct. at 1850–51 (first quoting *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014); then quoting *Arbaugh*, 546 U.S. at 515). For example, the Court found the following provisions do not invoke jurisdiction:

1. The requirement under 42 U.S.C. § 2000e–5(f)(1), stating, "[After exhausting,] a civil action may be brought against the respondent . . . ." *Fort Bend*, 139 S. Ct. at 1850.
2. The requirement under 42 U.S.C. § 7607(d)(7)(B), stating, "Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment . . . may be raised during judicial review." *EME Homer*, 572 U.S. at 511–12.
3. The requirement under 17 U.S.C. § 411(a), stating, "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

Perusal of the text here, on the other hand, convinces this Court that the exhaustion requirement under § 3582(c)(1)(A) is jurisdictional. The Court is not alone in this determination. *See, e.g.*, *United States v. Johnson*, No. CR RDB-14-0441, 2020 WL 1663360, at *4 (D. Md. Apr. 3, 2020). In stark contrast to the statutes above, which are ubiquitously devoid of language saying what a court may or may not do, the provision here speaks directly to judicial authority. Congress generally bans courts from modifying sentences: "The court *may not* modify a term of imprisonment once it has been imposed . . . ." § 3582(c) (emphasis added); *see United States v. Davis*, 825 F.3d 1014, 1028 n.14 (9th Cir. 2016) (en banc) (noting that § 3582(c) is a "jurisdictional hurdle"). Nested within this general ban, Congress provided for the exception here and again invoked judicial authority:

> *[T]he court*, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may* reduce the term of imprisonment . . . .

§ 3582(c)(1)(A) (emphasis added).

Similarly-worded requirements are jurisdictional. Congress mandated that "an appeal *may not* be taken to the *court of appeals*" for certain final orders of habeas corpus without a certificate of appealability. 28 U.S.C. § 2253(c)(1) (emphasis added). The Supreme Court held this to be a jurisdictional requirement. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Likewise, "[a] *court may* review a final order of removal only if . . . the alien has exhausted all administrative remedies . . . ." 8 U.S.C. § 1252(d)(1) (emphasis added). The Ninth Circuit determined that this requirement is also jurisdictional. *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004).

Some courts, however, have held that the exhaustion requirement here is not jurisdictional, relying on the facts that (1) the Government has waived the argument in other cases, (2) § 3582(c)(1)(A) does not use the word "jurisdiction," and (3) some of the non-jurisdictional

requirements mentioned above have procedures similar to that of § 3582(c)(1)(A). *See, e.g.*, *United States v. Connell*, No. 18-CR-00281-RS-1, 2020 WL 2315858, at *2–3 (N.D. Cal. May 8, 2020). These facts are unpersuasive for the following reasons: First, the conduct of the Government in other cases is immaterial because federal courts must ensure subject-matter jurisdiction exists— even if the parties do not raise the issue. *Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 152 (1908). Second, the Supreme Court held that Congress does not have to use any specific words such as "jurisdiction."[3] *Fort Bend*, 139 S. Ct. at 1850. Third, the Court focused its jurisdictional analyses in on the texts—not procedures—of the requirements. *Id.* at 1850–51. This Court thus must respectfully disagree with its sister courts.

In sum, Congress provided a clear statement restricting the Court's authority to consider motions for compassionate release unless the movant complies with the procedure of § 3582(c)(1)(A). This requirement therefore is jurisdictional.

> ### B.      *A Defendant Must Exhaust Each Extraordinary and Compelling Reason*

Defendant argues he has satisfied the exhaustion requirement because he sent a letter to the warden more than thirty days before filing this motion. While he admits that the letter did not include COVID-19 as an extraordinary and compelling reason, he argues that he did not need to present every basis to the warden. In support, he cites to *Sims v. Apfel*, where the Supreme Court "warned against reflexively" imposing issue exhaustion requirements, especially where there is not an adversarial proceeding. 530 U.S. 103, 110 (2000). The Court, however, distinguished instances in which the statutes or administrative regulations impose a requirement of issue exhaustion. *Id.* at 108 ("[W]hen regulations [require issue exhaustion in administrative appeals],

---

[3] The *Connell* court appears to hold that a requirement must contain the word "jurisdiction" to be jurisdictional. It stated, "The text of [§ 3582(c)(1)(A)] does not style exhaustion as a jurisdictional barrier." *Connell*, 2020 WL 2315858, at *2. The court then compared it to a provision held to be jurisdictional by the Ninth Circuit because it contained the word, "jurisdiction." *Id.* (citing *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 541 (9th Cir. 2019)).

courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." (citing *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 398 n.26 (9th Cir. 1982))).

Section 3582(c)(1)(A) allows a defendant to motion the court after "the lapse of 30 days from the [warden's] receipt of . . . a request" for the Director to motion on defendant's behalf. While the statute does not specify that a defendant must raise every basis in that request, the regulations do. They require that a request under the statute "shall at a minimum contain the . . . extraordinary or compelling circumstances that the [defendant] believes warrant consideration." 28 C.F.R. § 571.61(a). Further evincing that the regulators intended to impose such a requirement, internal appeals of these decisions "may not raise . . . issues not raised in the lower level filings." 28 C.F.R. § 542.15(b)(2); *see* 28 C.F.R. § 571.63 (allowing for such appeals but requiring them to comply with § 542.15). There is accordingly no other interpretation but that a defendant must present each basis for relief to the warden prior to presenting it to a court.

Furthermore, this conclusion comports with another ruling on this issue within this District. Relying on § 571.61, this District has required a defendant to exhaust every claimed extraordinary and compelling reason and held, "Proper exhaustion necessarily requires the [defendant] to present the same factual basis for the compassionate-release request to the warden." *United States v. Mogavero*, No. 2:15-CR-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020); *but see, e.g.*, *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *4 (S.D. Iowa Apr. 29, 2020) (holding, without discussing the regulations, that "it is inappropriate to require issue exhaustion" for a defendant's motion brought under § 3582(c)(1)(A)). This Court agrees with *Mogavero* and holds that exhaustion under § 3582(c)(1)(A) requires a defendant to specify each extraordinary or compelling circumstance he intends to rely on in a motion for compassionate release.

C.     *There Are No Cognizable Excuses for Failure to Exhaust Under § 3582(c)(1)(A)*

Finding Defendant has failed to exhaust his claim based on the current pandemic, the Court turns to his argument that such failure is excusable. He points to the pressing nature of the circumstances and the futility of raising COVID-19 as the Director has failed to recognize the disease as an extraordinary and compelling reason. The exhaustion requirement, however, is jurisdictional and, even if not jurisdictional, mandatory—each holding thwarts these arguments.

As mentioned above, jurisdictional requirements are not subject to the doctrine of equitable excuse. *Bowles v. Russell*, 551 U.S. 205, 214 (2007). This Court's holding that the requirement is jurisdictional therefore negates Defendant's contentions. Even if this exhaustion requirement is not jurisdictional, however, the argument still fails because Congress mandated the requirement without providing for any exception. The judiciary cannot usurp Congress's power by creating its own exceptions. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

In *Ross*, the Court was analyzing the exhaustion requirement under the Prison Litigation Reform Act, which states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Without addressing jurisdiction, it held that the phrase, "[n]o action shall be brought," was compulsory and, as such, "establish[ed] [a] mandatory exhaustion regime[], foreclosing judicial discretion." *Ross*, 136 S. Ct. at 1856.

The statute here likewise uses obligatory language, commanding the "exhaust[ion] [of] *all* administrative rights to appeal" or "the lapse of 30 days from the receipt of such a request by the warden"—otherwise the court "*may not*" modify a previously imposed sentence. § 3582(c) (emphasis added). The Third Circuit therefore found the statutory requirement to be mandatory, even in light of the urgent nature of COVID-19. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir.

2020) (finding that a failure to exhaust under § 3582(c)(1)(A) "present[ed] a glaring roadblock foreclosing compassionate release"). Defendant argues this holding is unpersuasive obiter dictum and points to what he argues are analogous requirements where courts have excused exhaustion: Title VII, Social Security, and habeas corpus. The Court disagrees with each argument.

Defendant claims that the holding in *Raia* is of little value because it is obiter dictum, but it is not. While this opinion arose out of unique procedural facts, the decision regarding exhaustion affected the court's ultimate disposition. "Obiter dictum" is a statement "made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *Best Life Assur. Co. of California v. Comm'r*, 281 F.3d 828, 834 (9th Cir. 2002) (quoting Black's Law Dictionary 1100 (7th ed. 1999)). In *Raia*, the circuit denied relief based on a lack of jurisdiction because only the district court can grant these motions, but it also declined to remand the case because of a failure to exhaust. 954 F.3d at 597. As this issue affected the court's decision, it is not obiter dictum.

Defendant also analogizes to Title VII's exhaustion requirement to which the Second Circuit has provided exceptions. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 386 (2d Cir. 2015) (excusing exhaustion "[w]hen an agency has previously 'taken a firm stand' against a plaintiff's position"). However, *Fowlkes* is inapposite as it predates *Ross*, which explicitly overruled the Second Circuit's practice of providing for exceptions to statutory exhaustion requirements, 136 S. Ct. at 1856. Indeed, a district court bound by the Second Circuit's precedent held that because of *Ross* there is no legally cognizable excuse for "deviating from [§] 3582(c)(1)(A)'s express statutory exhaustion requirement." *United States v. Montanez*, No. 15-CR-122-FPG, 2020 WL 2183093, at *6 (W.D.N.Y. May 5, 2020).

Defendant next points to the Social Security Act, which is an equally unavailing comparison. Under this Act, "any final decision of the Commissioner of Social Security made after

1   a hearing" is reviewable by a court. 42 U.S.C. § 405(g). While the finality of a decision is an

2   inexcusable prerequisite to judicial review, the requirement to follow the procedural steps defined

3   by the Social Security Administration by which a petitioner obtains such a decision is waivable

4   and excusable. *Smith v. Berryhill*, 139 S. Ct. 1765, 1773–74 (2019).

5          Defendant claims that since these steps are excusable, so is the requirement here. But this

6   analogy is also inapposite because Defendant seeks to excuse the process altogether for the

7   COVID-19 claim, which is more analogous to a mandatory final decision than an excusable

8   procedural step.

9          Furthermore, the Social Security Act grants a far more expansive scope to judicial review

10  than § 3582(c)(1)(A) by allowing a court to hear "*any* final decision." § 405(g) (emphasis added);

11  *see Smith*, 139 S. Ct. at 1774 ("Congress'[s] use of the word 'any' suggests an intent to use that

12  term 'expansive[ly]' . . . ." (second alteration in original) (footnote omitted) (quoting *Ali v.*

13  *Federal Bureau of Prisons*, 552 U.S. 214, 218–19 (2008))). On this distinguishing feature alone,

14  at least two district courts have already concluded that that the exhaustion requirement under

15  § 405(g) is inapposite to the one here. *United States v. Brown*, No. 04-CR-143 (DRH), 2020 WL

16  2128861, at *3 (E.D.N.Y. May 5, 2020); *United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020

17  WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020).

18         Lastly, Defendant points to *Hendricks v. Zenon*, where the Ninth Circuit allowed courts "to

19  dispense with" the exhaustion requirement of 28 U.S.C. § 2254(b) "in rare cases where exceptional

20  circumstances of peculiar urgency are shown to exist." 993 F.2d 664, 672 (9th Cir. 1993) (quoting

21  *Granberry v. Greer*, 481 U.S. 129, 134 (1987)). This analogy is likewise unhelpful because the

22  statute excused the exhaustion requirement where there exist "circumstances rendering such

23  process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b).

24  ///

The Court in sum finds all of Defendant's arguments regarding exhaustion unconvincing. The exhaustion requirement under § 3582(c)(1)(A) is jurisdictional, inexcusable, and requires a defendant to exhaust every claimed extraordinary and compelling reason for relief prior to presenting it to a court. Defendant concedes that he has not presented this claim based on COVID-19 to the warden; the Court therefore denies Defendant's motions inasmuch as they rely on this claim.

## II.     *Defendant has Failed to State an Extraordinary and Compelling Reason*

In addition to the exhaustion requirement, a defendant must show there is an extraordinary and compelling reason for reduction and such "reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Congress requires the Commission to promulgate such statements, 28 U.S.C. § 994(a)(2)(C), and to "describe what should be considered extraordinary and compelling reasons for sentence reduction," § 994(t). These policy statements are binding. *Dillon v. United States*, 560 U.S. 817, 820 (2010).

### A.     *U.S.S.G. § 1B1.13 is an Applicable and Binding Policy Statement*

U.S.S.G. § 1B1.13 is the applicable policy statement for motions under § 3582(c)(1)(A). Under this guideline, compassionate release is only available, as relevant here, where a defendant proves (1) "[e]xtraordinary and compelling reasons warrant the reduction" and (2) he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(1)(A), (2). It also provides an exclusive list of circumstances that qualify as extraordinary and compelling:

1. The defendant is suffering from a terminal illness . . . . [Or] [t]he defendant is suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

///

2.   The defendant is at least 65 years old[,] is experiencing a serious deterioration in physical or mental health because of the aging process[,] and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

3.   The death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [or] [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

4.   *As determined by the Director* . . . , there exists in the defendant's case an extraordinary and compelling reason other than [those described above].

§ 1B1.13 cmt. n.1(A)–(D) (emphasis added).

The Commission last modified § 1B1.13 a month before the President signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, into law. The Act materially altered § 3582(c)(1)(A) as previously only the Director could bring a motion for compassionate release. *Compare* § 3582(c)(1)(A) (2018) *with* § 3582(c)(1)(A) (2002) (amended 2018). Section 1B1.13 fails to reflect this change and still states that it applies to "motion[s] of the Director . . . under . . . § 3582(c)(1)(A)" without mentioning motions brought by a defendant.[4] As a consequence, courts have struggled to determine whether the list of extraordinary and compelling reasons under § 1B1.13 is still binding, especially since the Act was meant to increase the use of this safety valve. *See* First Step Act § 603(b) (titled "Increasing the use and transparency of compassionate release"); *see also FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 388–89 (1959) ("[A title of an act,] though not limiting the plain meaning of the text . . . [may] nonetheless [be] a useful aid in resolving an ambiguity.").

Many defendants, as here, have sought relief based on exigent circumstances not detailed by the application note, claiming that this amendment invalidated the policy statement in total or, at least, invalidated the provision that only the Director can determine "other reasons" for relief.

---

[4] The Commission does not currently have the ability to amend § 1B1.13 due to a lack of sufficient voting members seated. *See* § 994(a) (requiring the "affirmative vote of at least four members of the Commission" to promulgate guidelines and statements); *Organization*, U.S. Sentencing Comm'n, https://www.ussc.gov/about/who-we-are/organization (last visited May 20, 2020) (showing only two voting members seated on the Commission).

1    *See, e.g.*, *United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16,

2    2019) (analyzing whether an aging and sick parent is an extraordinary and compelling reason).

3    These defendants have had some success, as several courts have found § 1B1.13 is no longer

4    binding. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) ("A growing

5    number of district courts have concluded this means the Commission lacks an applicable policy

6    statement regarding when a judge can grant compassionate release.").

7        In so ruling, some courts have stated that the policy statement is inapplicable because it

8    does not interpret the current version of the statute. *See, e.g.*, *United States v. Cantu*, 423 F. Supp.

9    3d 345, 350 (S.D. Tex. 2019). Others have concluded the Director is no longer the only party able

10   to determine other extraordinary and compelling reasons under § 1B1.13, based on the fact that he

11   is no longer the only party capable of bringing such motions. *See, e.g.*, *United States v. Redd*, No.

12   1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("Application Note

13   1(D)'s prefatory language, which requires a determination by the . . . Director, is, in substance,

14   part and parcel of the eliminated requirement that relief must be sought by the . . . Director in the

15   first instance . . . ."). Still more have relied on the legislative intent to increase the grants of

16   compassionate release. *See, e.g.*, *United States v. Raymond Lopez*, No. 18-CR-2846 MV, 2020 WL

17   2489746, at *1 (D.N.M. May 14, 2020).

18       On the other hand, other courts have held that the definition of "extraordinary and

19   compelling reasons" under § 1B1.13 remains binding because Congress has not changed the fact

20   that the Commission—not the courts—is to make this determination. *See, e.g.*, *United States v.

21   Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114 (D. Alaska Apr. 24, 2020). Section 994(t)

22   reads, "The Commission . . . shall describe what should be considered extraordinary and

23   compelling reasons . . . ." Indeed, Congress has not amended § 994 since 2006. Thus, one court

24   concluded, "If the policy statement needs tweaking . . . , that tweaking must be accomplished by

the Commission, not by the courts." *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). This Court agrees with *Lynn* and *Strain*.

When the Commission promulgated the latest amendment to § 1B1.13, it provided a definition of "extraordinary and compelling reasons," which applied to every motion brought under § 3582(c)(1)(A). While the First Step Act expanded the scope of who could bring such motions, it did not affect the rest of the guideline, including how the Commission defined "extraordinary and compelling reasons," nor its partial delegation of this authority to the Director. *See Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, at *4 ("Nothing in the First Step Act nullifies, amends, or expressly contradicts the definition of 'extraordinary and compelling reasons' provided by U.S.S.G. § 1B1.13.").

As for the legislative history, it appears that Congress did intend to increase the number of compassionate releases. But Congress chose to effectuate this goal, in part, by allowing defendants to bring claims on their own accord—not by expanding the definition of "extraordinary and compelling reasons" nor changing the fact that the Commission is to define the term.

The Court therefore holds § 1B1.13 is applicable, binding, and provides the exclusive list of extraordinary and compelling reasons that may justify compassionate release unless and until Congress, the Commission, or the Director provide for additional bases.

### B.   *Defendant's Bases Fail to Qualify as Extraordinary and Compelling Reasons*

Defendant admits that neither of his purported bases fall into the explicit categories of extraordinary and compelling reasons justifying relief under the guideline. (ECF No. 56 at 3:8–10 ("[Defendant] does not rely on reasons set forth in subdivisions (A)–(C) . . . .").) This admission is correct. While § 1B1.13 does recognize certain existing medical conditions and family crises necessitating care of a spouse or minor child as extraordinary and compelling, it fails to list fear of contracting a disease or caring for parents. § 1B1.13 cmt. n.1. Thus, Defendant must rely on

"other reasons" as specified by the Director, but this avenue also proves fruitless. Here, the Director, through the warden, declined to find Defendant's circumstances extraordinary and compelling. (ECF No. 49.) Instead of appealing this determination, Defendant came here, but the Court does not have the authority to find other reasons on behalf of the Director.

Nonetheless, even if the Court could find extraordinary and compelling reasons apart from the list contained in § 1B1.13, it would decline to do so here. While the Court sympathizes with Defendant regarding his mother's deteriorating condition, it also agrees with other courts in concluding that such a circumstance is not extraordinary because "[m]any, if not all inmates, have aging and sick parents." *United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019). And, even if properly exhausted, his fear of catching COVID-19 is not an extraordinary and compelling reason unless he also shows that he is in a high-risk category rendering him in danger of becoming seriously ill from the disease. *See, e.g.*, *United States v. Mogavero*, No. 2:15-CR-00074-JAD-NJK, 2020 WL 1853754, at *3 (D. Nev. Apr. 13, 2020).

The Court accordingly concludes that neither of Defendant's bases for the motions constitute extraordinary and compelling reasons which justify compassionate release. This finding alone necessitates denial of the motions, but the Court will nonetheless address whether the Government's alternative argument that Defendant is a danger to the community provides an additional basis for this conclusion.

### III.   *Defendant is a Danger to the Community*

Despite the ongoing debate over whether § 1B1.13 is binding, courts have not struggled to conclude that compassionate release is only appropriate where a defendant is not a danger to the community and that this prerequisite has not changed following the First Step Act. *See, e.g.*, *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020) (denying a motion for compassionate release upon finding the defendant to be a danger to the

community). If the guideline is still binding, then it is an explicit requirement. § 1B1.13(2). On the other hand, even courts that have found the guideline no longer authoritative still require defendants to demonstrate that they are not dangers to society. *See, e.g.*, *United States v. Cantu*, 423 F. Supp. 3d 345, 352–53 (S.D. Tex. 2019). The Court agrees—it may only grant a motion for compassionate release if a defendant proves that he would not be a danger to the community.

There are three relevant factors for this determination: "the nature and circumstances of the offense," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

Defendant argues that he is not a danger to the community because he has not committed disciplinary infractions while in prison and his prison counselor gave him a glowing review. (ECF No. 54 Ex. A.) Defendant also points to the fact that he is now fifty-four years old and requires the use of a cane. *See* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 2, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (Dec. 2017) (last visited May 13, 2020) ("Older offenders were substantially less likely than younger offenders to recidivate following release.").

The Court disagrees and finds that Defendant is a danger to the community. As stated above, Defendant has a significant number of convictions, including several for violent felonies. And despite these numerous crimes and sentences, Defendant has always quickly recidivated, committing further dangerous crimes. From this, the Probation Office previously concluded that Defendant is a significant danger to the community.

In sum, the Court denies the entirety of Defendant's motions for compassionate release on two independent bases: failure to state an extraordinary and compelling reason and failure to demonstrate that he is not a danger to the community. The Court further denies his claim based on fear of contracting COVID-19 because of his failure to exhaust.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Motion for Appointment of Counsel (ECF No. 47) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's Motion for Compassionate Release (ECF No. 48) is DENIED.

IT IS FURTHER ORDERED that Defendant's Emergency Motion for Compassionate Release (ECF No. 52) is DENIED.

IT IS SO ORDERED.

Dated June 2, 2020.

_____
ROBERT C. JONES
United States District Judge